# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN CORTINA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ANAVEX LIFE SCIENCES CORP., CHRISTOPHER U. MISSLING, SANDRA BOENISCH, and ATHANASIOS SKARPELOS, <br><br> Defendants. | **Case No.** <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Kevin Cortina ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Anavex Life Sciences Corp. ("Anavex" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Anavex securities between May 17, 2013 and December 28, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Anavex is a biopharmaceutical company engaged in the discovery and development of drugs for the treatment of Alzheimer's disease, central nervous system diseases, and various cancers.

3.      Anavex was founded in 2006 and is headquartered in New York, New York.  The Company's shares trade on the NASDAQ under the ticker symbol "AVXL."

4.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Anavex had used a paid stock promoter to artificially inflate the Company's share price; and (ii) as a result of the foregoing, Anavex's public statements were materially false and misleading at all relevant times.

5.      On December 29, 2015, pre-market, Anavex disclosed that it had received a subpoena from the SEC on December 22, 2015.  Anavex stated, in part, that "[t]he Company believes the subpoena and investigation relate to the recent unusual activity in the market for the Company's shares."

6.      On this news, Anavex stock fell $0.72, or 10.24%, to close at $6.31 on December 29, 2015.

7.      On December 30, 2015, pre-market, *Seeking Alpha* published a report by Melissa Davis entitled "Anavex: A Regulatory Target Damaged By Incriminating Evidence" (the "Davis Report").  Elaborating on the subject of the SEC's subpoenas, the Davis Report stated, in part:

> Since its early days as a young penny-stock company, for example, Anavex has relied on The Primoris Group for publicity in spite of the firm's crowded roster of dubious microcap companies and its suspected involvement in pump-and-dump schemes.
>
> By the time that Anavex hired the firm almost a decade ago—using 50,000 stock options to help cover the bill—Primoris had already developed a reputation for touting the very sort of sleazy microcap stocks responsible for giving the industry such a horrible name. . . .
>
> With Primoris in charge of its publicity, Anavex has managed to generate some rather powerful hype of its own.
>
> Anavex owes at least some of its newfound popularity to the glowing review published by Kanak Kanti De, a so-called "doctor" who has developed a strong following on financial websites like Seeking Alpha and The Motley Fool (where he ranks as a senior healthcare contributor) by portraying himself "as a retired medical practitioner" with an impressive "M.D." behind his name.  Unless De rushed to pursue a second career in medicine after serving as the chairman of IndoGenic Consultancy—a paid content provider that caters to clients seeking favorable stock coverage—however, his credentials look somewhat inflated, to say the very least.  In the official bio that appeared on its website less than five years ago, IndoGenic described De as "a veteran college principal (retired) with a Ph.D. in English"—not a medical doctor—when the firm openly showcased his role as chairman of its board.

8.      On this news, Anavex stock fell $0.78, or 12.42%, to close at $5.50 on December 30, 2015.

9.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(b), as defendant Anavex is headquartered in this district and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Anavex securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Anavex is incorporated in Nevada, and the Company's principal executive offices are located at 51 West 52nd Street, 7th Floor, New York, New York 10019. Anavex's common stock trades on the NASDAQ under the ticker symbol "AVXL."

16.     Defendant Christopher U. Missling ("Missling") has served as the Company's Chairman, Chief Executive Officer ("CEO") and President since July 2013.

17.    Defendant Sandra Boenisch ("Boenisch") has served as the Company's Principal Financial Officer since October 2015.

18.    Defendant Athanasios Skarpelos ("Skarpelos") is a director of the Company and served as the Company's Principal Executive Officer, Principal Financial Officer and Principal Accounting Officer at all relevant times until July 2013.

19.    The defendants referenced above in ¶¶ 16-18 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    Anavex is a biopharmaceutical company engaged in the discovery and development of drugs for the treatment of Alzheimer's disease, central nervous system diseases, and various cancers.

21.    Anavex was founded in 2006 and is headquartered in New York, New York.  The Company's shares trade on the NASDAQ under the ticker symbol "AVXL."

### Materially False and Misleading Statements Issued During the Class Period

22.    The Class Period begins on May 17, 2013, when Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter and fiscal year ended March 31, 2013 (the "Q2 2013 10-Q").  For the quarter, the Company reported a net loss of $0.11 million, or zero per diluted share, on zero revenue, compared to a net loss of $0.91 million, or $0.12 per diluted share, on zero revenue for the same period in the prior year.

23.    The Q2 2013 10-Q contained a signed certification pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by defendant Skarpelos, stating that the financial information contained in

the Q2 2013 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On July 8, 2013, Anavex issued a press release and filed a Form 8-K with the SEC announcing the closing of $2.6 million in a private placement financing and conversion of liabilities, and an agreement with institutional investor Lincoln Park Capital Fund, LLC ("Lincoln Park Capital") for a funding commitment of up to $10 million with an initial investment of $100,000 (the "July 8, 2013 8-K").  The July 8, 2013 8-K also announced the appointment of defendant Missling as the Company's CEO.

25.     On August 14, 2013, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2013 (the "Q3 2013 10-Q").  For the quarter, the Company reported a net loss of $0.15 million, or $0.04 per diluted share, on zero revenue, compared to a net loss of $4.54 million, or $0.64 per diluted share, on zero revenue for the same period in the prior year.

26.     The Q3 2013 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q3 2013 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On December 30, 2013, Anavex filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and fiscal year ended September 30, 2013 (the "FY 2013 10-K").  For the quarter, the Company reported a net loss of $2.99 million, or $0.32 per diluted share, on zero revenue, compared to a net loss of $0.67 million, or $0.08 per diluted share, on zero revenue for the same period in the prior year.  For fiscal year 2013, the Company reported a net loss of $3.70 million, or $0.48 per diluted share, on zero revenue,

compared to a net loss of $8.30 million, or $1.16 per diluted share, on zero revenue for fiscal year 2012.

28.     The FY 2013 10-K contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the FY 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On February 14, 2014, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended December 31, 2013 (the "Q1 2014 10-Q").  For the quarter, the Company reported net income of $0.36 million, or $0.04 per diluted share, on zero revenue, compared to a net loss of $0.45 million, or $0.04 per diluted share, on zero revenue for the same period in the prior year.

30.     The Q1 2014 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On May 14, 2014, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q2 2014 10-Q").  For the quarter, the Company reported a net loss of $1.02 million, or $0.12 per diluted share, on zero revenue, compared to a net loss of $0.11, or zero per diluted share, on zero revenue for the same period in the prior year.

32.     The Q2 2014 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     On August 13, 2014, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the

"Q3 2014 10-Q").  For the quarter, the Company reported a net loss of $1.01 million, or $0.12 per diluted share, on zero revenue, compared to a net loss of $0.15 million, or $0.04 per diluted share, on zero revenue for the same period in the prior year.

34.     The Q3 2014 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On December 29, 2014, Anavex filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and fiscal year ended September 30, 2014 (the "FY 2014 10-K").  For the quarter, the Company reported a net loss of $9.70, or $0.88 per diluted share, on zero revenue, compared to a net loss of $3.70, or $0.32 per diluted share, on zero revenue for the same period in the prior year.  For fiscal year 2014, the Company reported a net loss of $11.37 million, or $1.16 per diluted share, on zero revenue, compared to a net loss of $3.70 million, or $0.48 per diluted share, on zero revenue for fiscal year 2013.

36.     The FY 2014 10-K contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the FY 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.     On February 17, 2015, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended December 31, 2014 (the "Q1 2015 10-Q").  For the quarter, the Company reported a net loss of $0.79 million, or $0.08 per diluted share, on zero revenue, compared to a net loss of $0.36 million, or $0.04 per diluted share, on zero revenue for the same period in the prior year.

38.     The Q1 2015 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.     On May 14, 2015, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q2 2015 10-Q").  For the quarter, the Company reported a net loss of $1.73 million, or $0.12 per diluted share, on zero revenue, compared to a net loss of $1.02 million, or $0.12 per diluted share, on zero revenue for the same period in the prior year.

40.     The Q2 2015 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41.     On August 14, 2015, Anavex filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q3 2015 10-Q").  For the quarter, the Company reported a net loss of $4.24 million, or $0.24 per diluted share, on zero revenue, compared to a net loss of $1.01 million, or $0.12 per diluted share, on zero revenue for the same period in the prior year.

42.     The Q3 2015 10-Q contained a signed certification pursuant to SOX by defendant Missling, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

43.     The statements referenced in ¶¶ 22-42 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Anavex had used a paid

stock promoter to artificially inflate the Company's share price; and (ii) as a result of the foregoing, Anavex's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

44.    On November 11, 2015, *Seeking Alpha* published a report by Jean Fonteneau entitled "Anavex Life Sciences: A Promotional Company With Too Many Red Flags" (the "Fonteneau Report").  The Fonteneau Report stated, in part:

> The case of Anavex Life Sciences:  AVXL made its debut as a publicly traded company in 2006 via a reverse merger, trading on the loosely regulated OTC market where the reporting requirements are very limited . . . .
>
> From 2006 until 2013, while it is unclear if and when any real drug development seemed to have taken place, Anavex always kept with its habit of regularly releasing PR updates, but the stock kept drifting lower and lower until the Spring of 2013, when a new episode of paid promotional activity seemed to have taken place as exhibited by [a] notice from the British Columbia Securities Commission circulated after it had ordered the suspension of trading in Anavex's shares following unusual activity and reports of paid promotions. . . .
>
> Coincidentally(?) and shortly thereafter, in July 2013, a new financing arrangement, taking advantage of the recent run-up in the stock price created by the paid promotional activity, was announced to the tune of $10 million with an entity called Lincoln Park Capital . . . and a new CEO was appointed.  It seemed like a new era was starting for the company, and the frequency of press releases and promotional activity picked up again, with now a more narrow focus on Alzheimer's disease.  At the time, the company seemed to have only one full-time employee, the new CEO.
>
> . . .
>
> **This was the start of a steep year-long run-up in AVXL's stock price; the stock climbing from about $0.65 in late 2014 to more than $14 during the week of November 2nd, 2015.**  In late October 2015, AVXL even managed to get itself uplisted from the OTC exchange to the Nasdaq, giving more credibility to the story and participating in boosting the stock price.

(Emphasis in original.)

45.    On December 29, 2015, pre-market, Anavex filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and fiscal

year ended September 30, 2015 (the "FY 2015 10-K").  For the quarter, the Company reported a

net loss of $5.36 million, or $0.20 per diluted share, on zero revenue, compared to a net loss of

$9.70 million, or $0.88 per diluted share, on zero revenue for the same period in the prior year.

For fiscal year 2015, the Company reported a net loss of $12.11 million, or $0.65 per diluted share,

on zero revenue, compared to a net loss of $11.37 million, or $1.16 per diluted share, on zero

revenue for fiscal year 2014.

46.     In the FY 2015 10-K, Anavex disclosed that it had received a subpoena from the

SEC on December 22, 2015.  Anavex stated, in part, that "[t]he Company believes the subpoena

and investigation relate to the recent unusual activity in the market for the Company's shares."

47.     As a result of this news, Anavex stock fell $0.72, or 10.24%, to close at $6.31 on

December 29, 2015.

48.     The FY 2015 10-K contained a signed certification pursuant to SOX by defendants

Missling and Boenisch, stating that the financial information contained in the FY 2013 10-K was

accurate and disclosed any material changes to the Company's internal control over financial

reporting.

49.     On December 30, 2015, pre-market, *Seeking Alpha* published a report by Melissa

Davis entitled "Anavex: A Regulatory Target Damaged By Incriminating Evidence" (the "Davis

Report").  Elaborating on the subject of the SEC's subpoenas, the Davis Report stated, in part:

> Since its early days as a young penny-stock company, for example, Anavex has
> relied on The Primoris Group for publicity in spite of the firm's crowded roster of
> dubious microcap companies and its suspected involvement in pump-and-dump
> schemes.
>
> By the time that Anavex hired the firm almost a decade ago—using 50,000 stock
> options to help cover the bill—Primoris had already developed a reputation for
> touting the very sort of sleazy microcap stocks responsible for giving he industry
> such a horrible name. . . .

With Primoris in charge of its publicity, Anavex has managed to generate some rather powerful hype of its own.

Anavex owes at least some of its newfound popularity to the glowing review published by Kanak Kanti De, a so-called "doctor" who has developed a strong following on financial websites like Seeking Alpha and The Motley Fool (where he ranks as a senior healthcare contributor) by portraying himself "as a retired medical practitioner" with an impressive "M.D." behind his name.   Unless De rushed to pursue a second career in medicine after serving as the chairman of IndoGenic Consultancy—a paid content provider that caters to clients seeking favorable stock coverage—however, his credentials look somewhat inflated, to say the very least.   In the official bio that appeared on its website less than five years ago, IndoGenic described De as "a veteran college principal (retired) with a Ph.D. in English"—not a medical doctor—when the firm openly showcased his role as chairman of its board.

50.     On this news, Anavex stock fell $0.78, or 12.42%, to close at $5.50 on December 30, 2015.

51.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Anavex securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Anavex securities were actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Anavex or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Anavex;

- whether the Individual Defendants caused Anavex to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Anavex securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

13

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

58.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Anavex securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Anavex securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

61.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.      This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.      During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Anavex securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Anavex securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

64.      Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

15

above, including statements made to securities analysts and the media that were designed to influence the market for Anavex securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Anavex's finances and business prospects.

65.     By virtue of their positions at Anavex, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Anavex securities from their personal portfolios.

67.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Anavex, the Individual Defendants had knowledge of the details of Anavex's internal affairs.

68.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Anavex.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Anavex's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Anavex securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Anavex's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Anavex securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

69.    During the Class Period, Anavex securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Anavex securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Anavex securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Anavex securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

70.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     During the Class Period, the Individual Defendants participated in the operation and management of Anavex, and conducted and participated, directly and indirectly, in the conduct of Anavex's business affairs.  Because of their senior positions, they knew the adverse non-public information about Anavex's misstatement of income and expenses and false financial statements.

74.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Anavex's financial condition and results of operations, and to correct promptly any public statements issued by Anavex which had become materially false or misleading.

75.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Anavex disseminated in the marketplace during the Class Period concerning

Anavex's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Anavex to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Anavex within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Anavex securities.

76.    Each of the Individual Defendants, therefore, acted as a controlling person of Anavex.  By reason of their senior management positions and/or being directors of Anavex, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Anavex to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Anavex and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

77.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Anavex.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

19

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 30, 2015

Respectfully submitted,

**POMERANTZ LLP**

 _/s/ Jeremy A. Lieberman_
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

# Plaintiff's Certification

I, Kevin Cortina, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:

I bought 122 shares on 12/28/2015 at $6.80

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: 12/30/2015



**ANAVEX LIFE SCIENCES CORP (AVXL)**                                    **Cortina, Kevin**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 12/28/2015 | Purchase | 122 | $6.8000 |