UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN CORTINA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ANAVEX LIFE SCIENCES CORP., CHRISTOPHER U. MISSLING, SANDRA BOENISCH, and ATHANASIOS SKARPELOS,<br><br>　　　　　　　　　　Defendants. | Case No. 1:15-cv-10162-JMF<br><br>Judge Jesse M. Furman<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MOVANT PHILLIP DIN, M.D. FOR APPOINTMENT OF LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**<br><br>**ORAL ARGUMENT REQUESTED** |

Movant Phillip Din, M.D. ("Din"), by and through his counsel, respectfully submits this memorandum of law in support of his motion for: (1) appointment of Din as Lead Plaintiff for the action pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq*. (the "PSLRA"); and (2) approval of Din's selection of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") as Lead Counsel for the putative Class pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(v).[1]

## I. PRELIMINARY STATEMENT

Din should be appointed to serve as Lead Plaintiff for the action because: (1) his motion for appointment as Lead Plaintiff is timely filed; (2) based on currently available information, Din has the largest financial interest in this litigation; and (3) Din will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Finally, Din's selection of Scott+Scott to serve as Lead Counsel for the putative class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Scott+Scott has a long history of successfully litigating securities fraud class actions and possesses the necessary resources to aggressively prosecute this action on behalf of the putative Class.

## II. FACTUAL BACKGROUND

On December 30, 2015, Kevin Cortina filed this putative Class action on behalf of all persons other than Defendants who purchased or otherwise acquired Anavex Sciences Corp.

---

[1] As of the filing of this motion, there are no related cases for consolidation pending in this district. However, this motion applies to any actions ultimately consolidated with the above-captioned action (the "*Cortina* Action").

("Anavex" or the "Company") securities between May 17, 2013 and December 28, 2015, both dates inclusive (the "Class Period"). *See* Complaint, ¶1.[2]

The *Cortina* Action was brought against Anavex and certain of its senior executives, and alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

Anavex is a biopharmaceutical company engaged in the discovery and development of drugs for the treatment of Alzheimer's disease, central nervous system diseases, and various cancers. Anavex was founded in 2006 and is headquartered in New York, New York. The Company's shares trade on the NASDAQ under the ticker symbol "AVXL." *See* ¶¶2-3.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Anavex had used a paid stock promoter to artificially inflate the Company's share price; and (ii) as a result of the foregoing, Anavex's public statements were materially false and misleading at all relevant times. *See* ¶4.

On December 29, 2015, pre-market, Anavex disclosed that it had received a subpoena from the SEC on December 22, 2015. Anavex stated, in part, that "[t]he Company believes the subpoena and investigation relate to the recent unusual activity in the market for the Company's shares." On this news, Anavex stock fell $0.72, or 10.24%, to close at $6.31 on December 29, 2015. *See* ¶¶5-6.

---

[2]   All ¶ and ¶¶ refer to the *Cortina* Class Action Complaint for Violation of the Federal Securities Laws, ECF No. 1.

2

On December 30, 2015, pre-market, *Seeking Alpha* published a report by Melissa Davis entitled "Anavex: A Regulatory Target Damaged By Incriminating Evidence" (the "Davis Report"). Elaborating on the subject of the SEC's subpoenas, the Davis Report stated, in part:

> Since its early days as a young penny-stock company, for example, Anavex has relied on The Primoris Group for publicity in spite of the firm's crowded roster of dubious microcap companies and its suspected involvement in pump-and-dump schemes.
>
> By the time that Anavex hired the firm almost a decade ago—using 50,000 stock options to help cover the bill—Primoris had already developed a reputation for touting the very sort of sleazy microcap stocks responsible for giving the industry such a horrible name. . . .
>
> With Primoris in charge of its publicity, Anavex has managed to generate some rather powerful hype of its own.
>
> Anavex owes at least some of its newfound popularity to the glowing review published by Kanak Kanti De, a so-called "doctor" who has developed a strong following on financial websites like Seeking Alpha and The Motley Fool (where he ranks as a senior healthcare contributor) by portraying himself "as a retired medical practitioner" with an impressive "M.D." behind his name. Unless De rushed to pursue a second career in medicine after serving as the chairman of IndoGenic Consultancy—a paid content provider that caters to clients seeking favorable stock coverage—however, his credentials look somewhat inflated, to say the very least. In the official bio that appeared on its website less than five years ago, IndoGenic described De as "a veteran college principal (retired) with a Ph.D. in English"—not a medical doctor—when the firm openly showcased his role as chairman of its board.

On this news, Anavex stock fell $0.78, or 12.42%, to close at $5.50 on December 30, 2015. As a result of defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. *See* ¶¶7-9.

3

### III.  ARGUMENT

#### A.  Din Should Be Appointed Lead Plaintiff

The Exchange Act, as amended by the PSLRA, establishes the procedure governing the appointment of a lead plaintiff in private securities fraud class actions.  *See* 15 U.S.C. §78u-4(a)(1)-(3)(B)(ii).  First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice").  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).

Second, within 60 days after publication of the Early Notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Finally, within 90 days after publication of the Early Notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process."  *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009).  First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (a) has either filed a complaint or moved for lead plaintiff in response to a notice; (b) has "the largest financial interest in the relief sought"; and (c) otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Second, so long as that presumption is not rebutted, the "most adequate plaintiff" is to be appointed the lead

4

plaintiff. *Id.* As demonstrated below, Din meets these requirements and should be appointed to serve as Lead Plaintiff in the Action.

### 1.    Din's Motion Is Timely

On December 30, 2015, the notice of pendency of this action was published on *Globe Newswire,* a national, business-oriented newswire service. *See* Declaration of Thomas L. Laughlin ("Laughlin Decl."), Ex. A. The requirements of §78u-4(a)(3)(A)(i) have, therefore, been met (see *Peters v. Jinkosolar Holding Co., Ltd.*, Case No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *2 (S.D.N.Y. Mar. 19, 2012)) and all putative Class members seeking to be appointed lead plaintiff are required to move for appointment by February 29, 2016 (*i.e.*, within 60 days of publication of the Early Notice)). *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Din's motion for appointment as Lead Plaintiff was timely filed. Moreover, Din has submitted a Certification stating his willingness to serve as a representative party on behalf of the Class. *See* Laughlin Decl., Ex. B.

### 2.    Din Believes He Has the Largest Financial Interest in the Relief Sought by the Class

Based on the evidence contained in Din's concurrently filed certification, Din believes that he has the largest financial interest in the relief sought in this litigation. *See* Laughlin Decl., Ex. B. Din believes that his financial interest in the relief sought by the Class is greater than that of any other qualified movant seeking appointment as Lead Plaintiff. Din has suffered a loss of $28,862.41 as a result of the disclosures of the fraud. *See* Laughlin Decl., Ex. C.

Given that Din has the largest financial interest in this litigation and, as discussed below, satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, he should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### 3. Din Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

Pursuant to §21D(a)(3)(B) of the Exchange Act, a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff, and, at this stage, those findings need only be "preliminary." *See Tronox*, 262 F.R.D. at 344.

"'Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (citation omitted). Here, the claims asserted by Din are typical of the claims of the other members of the putative Class because, like all other Class members, Din: (a) purchased Anavex common stock during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements; and (c) suffered damages as a result thereof. Since Din's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See* Newberg, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2008).

With respect to adequacy, a plaintiff is an adequate class representative when it possesses common interests and an absence of conflict with fellow class members, and the plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Tronox*, 262 F.R.D. at 343. Din is "adequate" to serve as a Class representative in the instant litigation because his interests are clearly aligned with the interests of the putative Class. Din, like all other members of the Class, suffered losses as a result of purchasing Anavex common stock at prices that were artificially inflated due to Defendants' alleged misconduct. Din will, therefore, benefit from the same relief as other Class members. Under these circumstances, there exists absolutely no evidence of antagonism between Din and the putative Class.

Din has also demonstrated that he is an adequate representative in this matter by retaining competent and experienced counsel. As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, Din has made a *prima facie* showing that he satisfies all of the requirements of Rule 23 for the purposes of his motion.

### B. The Court Should Approve Din's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, the court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Din has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Laughlin Decl., Ex. D.

Specifically, Scott+Scott has served as lead counsel in many high-profile class actions and recovered hundreds of millions of dollars for victims of corporate fraud.[3] The firms' efforts have not gone unnoticed by the courts. For instance, in *Cornwell v. Credit Suisse Group*, Case No. 08-03758-VM-JCF (S.D.N.Y.), a case in which Scott+Scott served as co-lead counsel and recovered $70 million for the class, the Court stated:

> Lead Plaintiffs' counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case. Based upon Lead Plaintiffs' counsel's diligent efforts on behalf of the Settlement Class, as well as their skill and reputations, Lead Plaintiffs' counsel were able to negotiate a very favorable result for the Settlement Class. Lead Plaintiffs' counsel are among the most experienced and skilled practitioners in the securities litigation field, and have unparalleled experience and capabilities as preeminent class action specialists.

*Id.* at ECF No. 117.

Scott+Scott is also currently serving as lead or co-lead counsel in securities fraud class actions pending in this and several other United States district courts. *See In re NQ Mobile, Inc. Sec. Litig.,* 1:13-cv-07608-WHP (S.D.N.Y.) (ECF No. 72) and *Local No. 8 IBEW Ret. Plan v. Vertex Pharm. Inc.,* 1:14-cv-12296-FDS (D. Mass.) (ECF No. 15).

In light of the foregoing, the Court should approve Din's selection of Scott+Scott as Lead Counsel.

---

[3] Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-CV-01844 DJS (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) ($50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) ($61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) ($27 million); and *In re Washington Mutual Mortg. Backed Sec. Litig.*, No. C09-37 MJP (W.D. Wash.) ($26 million).

## IV.  CONCLUSION

For all the foregoing reasons, Din respectfully requests that the Court appoint Din as Lead Plaintiff; approve Din's selection of Scott+Scott to serve as Lead Counsel; and order such other relief as the Court may deem just and proper.

Respectfully Submitted,

DATED:  February 29, 2016
        New York, New York

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/* Thomas L. Laughlin
THOMAS L. LAUGHLIN (TL-8888)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: tlaughlin@scott-scott.com

DAVID R. SCOTT
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Tel: (860) 537-5537
Fax: (860) 537-4432
david.scott@scott-scott.com

GEOFFREY M. JOHNSON
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: (216) 229-6088
Fax: (216) 229-6092
gjohnson@scott-scott.com

*Counsel for Movant Phillip Din, M.D.*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of February, 2016 at New York, New York.

        */s/* Thomas L. Laughlin
        THOMAS L. LAUGHLIN
        SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
        The Chrysler Building
        405 Lexington Avenue, 40th Floor
        New York, NY 10174
        Telephone: (212) 223-6444
        Fax: (212) 223-6334
        Email: tlaughlin@scott-scott.com